# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**

**November 29, 2016**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

**MARK A. WOLFORD,**
**Claimant Below, Petitioner**

**vs.)    No. 15-1158** (BOR Appeal No. 2050739)
                    (Claim No. 2014022146)

**RT ROGERS OIL COMPANY,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Mark A. Wolford, by William B. Gerwig, III, his attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. RT Rogers Oil Company, by Alyssa A. Sloan, its attorney, filed a timely response.

This appeal arises from the Board of Review's Final Order dated November 24, 2015, in which the Board affirmed an August 21, 2015, Order of the Workers' Compensation Office of Judges. In its Order, the Office of Judges affirmed the claims administrator's April 10, 2015, decision to deny a request to add cervicobrachial syndrome, cervical root lesion, and a cervical sprain as compensable diagnoses in the claim, as well as an April 30, 2015, decision to deny a request for an orthopedic consultation for the left upper extremity.[1] The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Wolford, an employee for RT Rogers Oil Company, was in a car accident in the course of his employment on January 24, 2014, when his truck slid on ice. Mr. Wolford went to

---

[1] The denial of an orthopedic consultation was not appealed to this Court.

1

Summers County Appalachian Regional Healthcare Hospital and was diagnosed with a cervical sprain, thoracic sprain, contusions, and abrasions. X-rays revealed degenerative changes and no major soft tissue injury. A report of injury was filled out. It listed the neck, back, thoracic spine, lumbar spine, forehead, and hand as injured body parts. The claims administrator held the claim compensable for lumbar and thoracic sprains on January 31, 2014.

Treatment notes from Mr. Wolford's treating physician, Steven Richman, D.O., dated February 3, 2014, indicated that Mr. Wolford had left lower extremity pain and weakness, and low back pain with left radiculopathy. A February 16, 2014, MRI of the thoracic spine revealed no acute fracture, misalignment or primary spinal stenosis. There was some stable chronic minor wedging at T4 and T5. There were multilevel minor posterior marginal osteophytes in the dorsal spine causing no significant central canal stenosis. A March 9, 2014, MRI of the lumbar spine revealed a posterior disc bulge at L3-4 and a broad posterior disc protrusion at L4-5. There was a minor disc bulge at L5-S1. A functional capacity evaluation report dated June 2, 2014, from the employer, RT Rogers Oil Company, indicated that Mr. Wolford could work, but could not do any heavy lifting. On June 30, 2014, another functional capacity evaluation report was completed. The report indicated that Mr. Wolford has pain when in awkward positons for extended periods of time.

Dr. Richman stated in correspondence addressed "To whom it may concern" that Mr. Wolford had been released from his care related to the compensable injury on January 24, 2014. He opined that Mr. Wolford had reached maximum medical improvement from that injury. He had sustained a permanent partial disability, which left sacroiliac articulation. He was scheduled to have an independent medical evaluation by Joseph Grady, M.D., on July 30, 2014. Dr. Richman noted that Mr. Wolford continued to have problems with certain activities of daily living.

On July 30, 2014, an independent medical evaluation report from Dr. Grady was completed. Dr. Grady's assessment was chronic lumbosacral myofascial strain superimposed on multilevel degenerative changes and a resolved thoracic sprain. Mr. Wolford had no symptoms in the thoracic area. He found that Mr. Wolford was at maximum medical improvement. A provider notice dated August 8, 2014, sent to Summers County Appalachian Regional Healthcare Hospital, indicated that Mr. Wolford reached maximum medical improvement and that he might require periodic medical support in the future.

A February 25, 2015, nerve conduction study report from Joe O. Othman, M.D., a neurologist, was completed as part of an independent medical evaluation. This study was performed on the lower extremities and lumbar paraspinals. It showed mild diffuse sensory polyneuropathy. There was no evidence of lumbar radiculopathy on either side. Shortly thereafter, Dr. Othman performed a nerve conduction study of the upper extremities and cervical paraspinals. His impression was that there was moderately severe bilateral carpal tunnel syndrome with the right being worse than the left. There was a severe chronic left ulnar neuropathy across the elbow. There was no evidence of cervical radiculopathy on either side. His conclusion was that the claimant was suffering from severe idiopathic peripheral

polyneuropathy, axonal in nature, which was most likely related to alcohol abuse. He saw no evidence of the work-related injury causing the peripheral neuropathy.

A diagnostic update request from Dr. Richman dated March 30, 2015, was completed.[2] Dr. Richman requested the addition of the diagnoses of cervicobrachial syndrome and cervical root lesion. Dr. Richman wrote that Mr. Wolford had muscle atrophy of the left thenar and hypothenar areas of the left hand, decreased circumference of the left forearm, decreased left upper extremity strength, and left-sided low back pain. This was in addition to the appearance of muscle wasting to the left arm. Dr. Richman concluded that Mr. Wolford had serious neurological conditions and should undergo an orthopedic consult without delay. He alleged that the cervical spine had always been part of the diagnosis in this claim.

A physician review report from Randall Short, D.O., dated March 31, 2015, recommended denying the request for an orthopedic consultation for evaluation of the left upper extremity for weakness, pain, and muscle atrophy. He found that this was unrelated to the compensable injury which had resulted in thoracic and lumbar strain/sprains. Dr. Othman found in his nerve conduction study report that Mr. Wolford's neuropathy was most likely related to alcohol abuse. Dr. Short saw no evidence of a work-related cause for the peripheral neuropathy. Therefore, he determined that the neurological condition necessitating the request for the orthopedic consultation was not work-related and should not be authorized.

On April 10, 2015, the claims administrator denied the request to add cervicobrachial syndrome, cervical root lesion, and a cervical sprain as compensable diagnoses in the claim. On April 28, 2015, the Street Select Grievance Board met and determined that the requested diagnoses were properly denied. The claims administrator denied the request for an orthopedic consultation on April 30, 2015.[3]

The Office of Judges determined that a cervical spine sprain was not received in the course of and as a result of Mr. Wolford's employment. The Office of Judges determined that the onset of the cervical complaints were too remote in time to support an inference that the compensable injury caused them. The Office of Judges noted that the claim was only held compensable for lumbar sprain and thoracic sprains. In addition, the Office of Judges found that Mr. Wolford was found to be at maximum medical improvement by his own physician, Dr. Richman, prior to Dr. Grady's independent medical evaluation which occurred before the onset of his cervical spine complaints. Dr. Grady's independent medical evaluation also supported the notion that he was at maximum medical improvement prior to his cervical complaints. The Office of Judges found that it was not until approximately a year after the injury that Mr. Wolford began showing cervical and upper extremity problems. The Office of Judges also concluded that Dr. Othman's nerve conduction testing did not demonstrate any connection between the compensable injury and the cervical issues. Dr. Othman found the cervical symptoms were due to alcohol abuse and not the compensable diagnosis. The Board of Review adopted the findings of the Office of Judges and affirmed its Order.

---

[2] The Office of Judges incorrectly listed the date as April 30, 2015.
[3] The denial of an orthopedic consultation was not appealed to this Court.

After review, we agree with the consistent decisions of the claims administrator, the Office of Judges, and Board of Review. There was sufficient evidence for the Office of Judges and Board of Review to find that Mr. Wolford did not suffer a cervical sprain in the course of and as a result of his employment. Mr. Wolford did not begin complaining of cervical issues until well after the compensable injury. Dr. Richman, Mr. Wolford's treating physician, opined that he was at maximum medical improvement for his injuries, as did Dr. Grady. Dr. Othman's testing also supports the determination that the cervical sprains are not compensable.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: November 29, 2016**

**CONCURRED IN BY:**
Chief Justice Menis E. Ketchum
Justice Robin J. Davis
Justice Margaret L. Workman
Justice Allen H. Loughry II

**DISSENTING:**
Justice Brent D. Benjamin

4